# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NATASHA EMBRY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 3685 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CAROLYN W. COLVIN, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Natasha Embry seeks an award of attorney fees and costs under the Equal Access to Justice Act totaling $66,240.82 for approximately 357 hours of work. U.S.C. § 2512 ("EAJA"). Because I find the position of the Commissioner of the Social Security Administration ("Commissioner") not substantially justified, fees shall be awarded. However, I find the number of hours spent by plaintiff's attorneys to be unreasonable, and the amount sought will be reduced accordingly.

## I.
## PROCEDURAL HISTORY

Natasha Embry's application for disability benefits failed at the administrative level. She applied for Supplemental Security Income and Disability Insurance Benefits on December 31, 2009, alleging that she became disabled on September 30, 2009, due to Moyamoya syndrome, a disease that can block blood flow to the brain and create increased risk of stroke. (Administrative Record ("R.") 116-118, 155). The Administrative Law Judge ("ALJ") rejected her application on May 11, 2010, concluding that while afflicted with five separate severe impairments including Moyamoya and

obesity, Embry did not meet the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18) and that Embry was still able to perform sedentary work in the regional economy. The Appeals Council affirmed that decision on January 19, 2012.

Embry then sought review through the courts, and I ordered the case remanded to the ALJ. (*See* Dkt. Nos. 43, 44). While the ALJ's decision to deny benefits may ultimately be correct, I concluded that the ALJ failed to build a "logical bridge" from the evidence to her conclusions, as required by Seventh Circuit precedent. *Schmidt v. Barnhart*, 395 F.3d 1171, 1176 (7th Cir. 2005); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The case had to be remanded due primarily to the ALJ's flawed analysis regarding Embry's credibility. The ALJ took great license when characterizing Embry's daily limitations, failed to mention facts like those regarding Embry's concentration problems, and misapprehended testimony regarding Embry's sleep and attempt to find work. *See* Dkt. No. 43 p. 12-17.

This flawed credibility determination was "interwoven" with the ALJ's step three conclusion as well as her residual functional capacity conclusion, and, coupled with the cursory nature of her step three analysis, compelled remand. *See* Dkt. No. 43 p. 12, 13.

## II.
## WHETHER THE COMMISSIONER'S POSITION WAS SUBSTANTIALLY JUSTIFIED

### A.
### The Standard of Review

Remand does not necessitate an award of plaintiff's attorney's fees. *Potdar v. Holder*, 585 F.3d 317, 319 (7th Cir. 2009). A district court may award fees under the EAJA if: "(1) the claimant is a 'prevailing party'; (2) the government's position was not

substantially justified; (3) no 'special circumstances make an award unjust'; and (4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement." 28 U.S.C. § 2412(d)(1)(A),(B); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). Embry is a prevailing party by virtue of the remand. *Shalala v. Schaefer*, 509 U.S. 292, 297-98 (1993). The government does not argue that there are 'special circumstances' in this case and concedes that the fee application was properly submitted. *See* Dkt. No. 48 p. 1. The issue, then, is whether the Commissioner was substantially justified.

The Commissioner has the burden of showing his position was substantially justified, and if she does, the plaintiff is not entitled to fees. *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009). "Substantially justified" means the Commissioner's position had a reasonable basis in fact and law. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Stewart*, 561 F.3d at 683. That is, the Commissioner must have had a reasonable basis in truth for the facts he alleged, had a reasonable basis in truth for his proposed legal theory, and made a reasonable connection between the facts and theory. *Golembiewski*, 283 F.3d at 724. To decide if the Commissioner's position as a whole was substantially justified, the court makes a binary decision based on the entire civil action, considering both litigation and pre-litigation behavior including the ALJ's opinion. *Suide v. Astrue*, 453 Fed.Appx. 646, 648-49 (7th Cir. 2011); *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006).

While the burden is on the Commissioner to show substantial justification, the plaintiff has an "uphill challenge." *Bassett v. Astrue*, 641 F.3d 857, 859 (7th Cir. 2011). The Commissioner is substantially justified if a reasonable person could believe the

position was correct. *Golembiewski*, 283 F.3d at 724; *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). The Commissioner's position must be "stronger than merely non-frivolous," but does not have to have been correct. *Suide*, 453 Fed.Appx. at 648. Indeed, even if the ALJ is "completely wrong," the Commissioner may be substantially justified. *Bassett*, 641 F.3d at 859. The Commissioner does not need to be justified "to a high degree," but can rather satisfy his burden if there is "genuine dispute" or if "'reasonable persons could differ as to the appropriateness of the contested action.'" *Suide*, 453 Fed.Appx. at 648. *See Pierce*, 487 U.S. at 565.

For fees to be awarded, it must "typically take[] something more egregious than just a run-of-the-mill error in articulation…something like the ALJ's ignoring or mischaracterizing a significant body of evidence, or the Commissioner's defending the ALJ's opinion on a forbidden basis." *Britton-Dillon v. Astrue*, 433 Fed.Appx. 474, 476 (7th Cir. 2011); *Bassett*, 641 F.3d at 860. However, "strong language against the government's position in an opinion discussing the merits of a key issue is evidence in support of an award of EAJA fees." *Golembiewski*, 283 F.3d at 725.

**B.
Discussion**

This is a close case, because the ALJ did partly rely on medical opinions and objective medical evidence that might undermine Embry's credibility. As I noted in remanding the case, all impairments mentioned by Embry's treating doctors are often termed "mild." Similarly, I noted that the objective medical evidence does not demonstrate significant limitations in Embry's physical or mental capacities. On remand, this may ultimately lead to a denial of benefits. The ALJ was correct to emphasize the

4

opinion of Embry's treating physician, Dr. Mohammed, and explicitly did so when making her credibility and residual functional capacity findings. Dkt. No. 14-3 p. 22, 24; *McKinzey v. Astrue*, 641 F.3d 884, 890-91 (7th Cir. 2011) (emphasizing a treating physician's testimony over a non-examining source). While the ALJ did not focus on Dr. Mohammed's testimony in her step three analysis, the doctor's findings support the step three analysis also. Dkt. No. 14-3 p. 20.

The Seventh Circuit has made clear, though, that the ALJ cannot rely exclusively on medical evidence to discredit a plaintiff's testimony. Certainly, objective medical evidence can undermine a claimant's credibility. *See, e.g.*, *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013); *McKinzey*, 641 F.3d at 891; *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). Still, an ALJ may not disregard a claimant's complaints of pain simply because they are not supported by the objective medical evidence. *See, e.g.*, *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014); *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

Resolution of this fee petition, then, turns on the validity of the rest of the ALJ's reasoning, and whether the errors that justified remand were egregious enough to justify awarding plaintiff attorney's fees. I hold that the ALJ's remaining reasoning was the sort of "ignoring or mischaracterizing [of] a significant body of evidence" that justifies awarding of fees. *Britton-Dillon*, 433 Fed.Appx. at 476.

The ALJ's errors in the credibility analysis satisfy the situation contemplated in *Britton-Dillon* regarding "the ALJ's ignoring or mischaracterizing a significant body of evidence." 433 Fed.Appx. at 476. First, the credibility determination was a significant body of evidence. As I noted when remanding the case, this credibility determination

affected not only the residual functional capacity conclusion but also the step three analysis, which itself was rather cursory. "The ALJ's step three determination was necessarily interwoven with her assessment of Ms. Embry's credibility, as was, indeed, her residual functional capacity finding." Dkt. No. 43, pg. 13.

Second, the ALJ's credibility determination included much mischaracterization and ignored many facts. The ALJ failed to appreciate how limited Embry is in her daily activities and took great license in framing what Embry's abilities were. The ALJ ignored many of Embry's difficulties, including Embry's need for help in dressing, her problems with concentration, and the assistance she requires from her daughter while shopping. The ALJ characterized Embry as being able to prepare meals, when really she can only make sandwiches and use a microwave. The ALJ flatly mischaracterized Embry's testimony regarding her sleep patterns.

She said that Embry testified inconsistently, saying at one point that she got five hours of sleep and saying at another point that she got two hours of sleep. In reality, Embry was consistent, saying she got five hours of sleep but had to sleep two hours *during the day* due to fatigue. The ALJ used Embry's testimony regarding her headaches to impeach her, noting that Embry testified that her headaches did not improve after surgery but also that they are relieved with over-the-counter medication. It is not clear why the ALJ believed this undermined Embry's credibility, and her testimony that she suffers daily headaches that for last two hours and are relieved with Ibuprofen is neither incredible nor suspicious. Most significantly, the ALJ misapprehended the record when she claimed Embry admitted to looking for work. If Embry admitted looking for work while at the same time applying for disability and claiming she was unable to work, that

6

would greatly affect her credibility. However, Embry did not say she was looking for work, but merely that she was collecting unemployment.

The government argues that the fact that Embry was collecting unemployment, coupled with other reasons stated by the ALJ like the fact that Embry did not comply with physical therapy, make the ALJ's credibility analysis reasonable and therefore the Commissioner's position substantially justified. Dkt. No. 14-3 p. 23. As I stated when remanding the case, Embry's collection of unemployment warrants the ALJ questioning Embry's credibility. *See Lott v. Colvin*, 541 Fed.Appx. 702, 707 (7th Cir. 2013); *Knox v. Astrue*, 327 Fed.Appx. 652, 656 (7th Cir. 2009) ("[I]t is appropriate for the ALJ to consider any representations [the claimant] has made to state authorities and prospective employers that he can work.") Still, receiving unemployment is not definitive to showing someone is not disabled, and an ALJ should be careful when using it to undermine credibility. *See Scrogham v. Colvin*, 765 F.3d 685, 689 (7th Cir. 2014); *Richards v. Astrue*, 370 Fed.Appx. 727, 732 (7th Cir. 2010). Ultimately, the ALJ ignored and mischaracterized a large amount of the credibility evidence. Given those errors and the importance of the credibility analysis in the ALJ's conclusion to deny benefits, these few responses by the government cannot justify the Commissioner's position.

## III.
## THE REASONABLENESS OF THE REQUESTED FEES

### A.
### The Hourly Fee Rate

Under the EAJA, fees "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that…attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living

7

[since 1996, when the current version of the EAJA was passed] or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The statute, then, sets a rate of $125 as a presumptive ceiling, requiring the plaintiff to justify a higher rate by pointing to inflation or showing that competent counsel could only come from a small group of specialized attorneys that cost more than $125. *Mathews-Sheets v. Astrue*, 653 F.3d 560, 562-63, 565 (7th Cir. 2011). Embry seeks an increased rate of $185.59 per hour, justified by cost-of-living inflation. She claims a total of approximately 357 hours of attorney work, including the petition for attorney's fees, plus $26.80 in costs, for a total of $66,214.02. This court must decide the appropriate hourly rate and the reasonableness of the hours claimed to have been spent.

Since the parties briefed this case, the Seventh Circuit has overruled parts of the leading case, *Mathews-Sheets*, and made the process of justifying a higher fee rate easier for plaintiffs. In *Sprinkle v. Colvin*, 777 F.3d 421, 423 (7th Cir. 2015), the court made clear that EAJA claimants seeking inflation-based rate adjustment do not need to prove the "effects of inflation on the particular attorney's practice," and do not need to prove "that no competent attorney could be found for less than the requested rate." *Id.* at 423. Rather, a claimant can rely on a "general and readily available measure of inflation such as the Consumer Price Index [CPI]." *Id.* "An affidavit from a single attorney testifying to the prevailing market rate in the community may suffice to meet that burden." *Id.* Courts should generally award fees through the CPI by using the date on which the legal services were performed. *Id.* at 428. However, this does not make an increased fee automatic, as the government can still raise evidence that the CPI does not provide an accurate measure

8

of the cost of living in a certain legal market. *Id*. The claimants must also produce "satisfactory evidence" that the "rate they request is in line with those prevailing in the community for similar services by lawyers of comparable skill and experience." *Id*. A district court, "in its discretion," may find one sworn statement from the claimant's attorney as sufficient for this purpose. *Id.* at 429.

I find the requested figure of $185.59/hour appropriately calculated by plaintiff through the CPI, and accept the affidavit of lead counsel, Charles Jackson, as sufficient to show that this rate is in line with the prevailing market rate. Dkt. No 45-4, pg. 4. Plaintiff uses the average annual CPI-U for 2013 when calculating the amount of increase. Plaintiff's attorneys completed their work in 2013, so I find that method appropriate. As discussed, I have the discretion to accept one attorney's affidavit as sufficient to show this rate is in line with prevailing community rates. *Sprinkle*, 777 F.3d at 429. Also, this requested rate is similar to what judges in this Circuit have approved since *Sprinkle*. *See, eg*, *Trump v. Colvin*, 2015 WL 970111 at *3, 4 (N.D. Ill. 2015); *Smith-Harvey v. Colvin*, 2015 WL 1548955 at *2 (S.D. Ind. 2015); *Cheney v. Colvin*, 2015 WL 2128839 at *1 (S.D. Ill. 2015).

**B.
The Number of Hours Spent on the Case**

Plaintiff contends that the number of hours her counsel expended on the case, approximately 357, is reasonable, and that the court has the discretion to award fees for those hours. She is right that there is no *per se* rule capping hours. Rather, the court must determine if the hours are "reasonably expended." Attorneys must use "billing judgment," as "hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley v. Eckerhart*, 461 U.S.

9

424, 433-434 (1983). Hours not reasonably expended may be excessive, redundant or unnecessary considering factors like novelty and difficulty of the questions, the skill required to perform the legal service, and the customary fee. *Id* at 434.

District courts have "wide latitude… in setting awards of attorney's fees…." *Sottoriva v. Claps*, 617 F.3d 921, 975 (7th Cir. 2010); *Basset*, 641 F.3d at 859. After all, "[l]awyers do not come from cookie cutters," *Gusman v. Unisys Corp.*, 986 F.3d 1146, 1150 (7th Cir.1993). The court "is not in the business of divining why a particular attorney reads or writes at a certain rate of speed in one case and a different rate in another." *Delgado v. Astrue*, 2012 WL 6727333 at *3 (N.D. Ill. 2012).

It is clear here, however, that the number of hours requested by plaintiff is unreasonable. Plaintiff argues that this case required her counsel, inexperienced in these matters, to spend significant time dealing with complex issues. This required engaging with Embry as a client, researching a rare disease, and parsing through a nearly 530-page record (which is not particularly voluminous as these records go). True, the condition may be rare, but that does not necessarily make it more difficult to understand. As the government points out, the issues presented in this case, focusing primarily on the ALJ's credibility assessment, were not out of the ordinary. The administrative record was 524 pages long, which is also not out of the ordinary. Many social security disability cases deal with records much longer. *See Trump*, 2015 WL 970111 at *3,4 (N.D. Ill. 2015) (awarding less than 60 hours in fees in a case with a record over 1,000 pages long, and in which claimant was granted leave to file brief in excess of 15 pages); *Fricano v. Colvin*, 2014 WL 2068415 at *3, 4 (N.D. Ill. 2014) (awarding approximately 45 hours of work

with a record of 694 pages); *Taloff v. Astrue*, 2014 WL 868040 at *3, 4 (N.D. Ill. 2014) (awarding approximately 65 hours of work with a record of 796 pages).

The government argues that plaintiff should be awarded fees for no more than 60 hours. The government is correct that judges in this Circuit rarely grant awards that greatly exceed that number. *See, eg*, *Garcia v. Colvin*, 2013 WL 1343662 at *2 (N.D. Ind. 2013) (characterizing 61.3 hours as acceptable, but that it is "at the high end of the range of hours that courts within this circuit have considered reasonable for social security appeals"); *Schulten v. Astrue*, 2010 WL 2135474, at *6 (N.D.Ill. 2010) (finding the "permissible range" to be, "generally speaking" 40 to 60 hours); *Porter v. Barnhart*, 2006 WL 1722377 at *3, 4 (N.D. Ill. 2006) (awarding 88.2 hours of attorney's fees to court-appointed counsel when plaintiff asked for 154.6, while saying that 37.4 hours spent reviewing the record, researching, and drafting a summary judgment motion was excessive). In this case, plaintiffs spent 14 hours reviewing the record, 27 hours researching, and 192 hours drafting the motion for summary judgment. This is plainly excessive. It means that the plaintiff's counsel spent almost 5 weeks of 40 hours each preparing a slightly oversized brief. That is excessive by any standard. Plaintiff does not cite to, nor has this court found, any case in this Circuit that awards more than 90 hours of fees for a similar social security EAJA fee case that has yet to proceed to the appellate level.

Plaintiff does validly argue, though, that the government contributed to the overall cost of this litigation. The government sought a 45-day extension of time to file a response and cross-motion for summary judgment (Dkt. No. 27) and sought leave to file a brief with excess pages (Dkt. No. 31). It argued the page extension was justified by citing

11

the length of the record and plaintiff's allegations that the ALJ erred in five severe impairments that would each require review. Dkt. No. 31. This tends to supports plaintiff's notion that there were at least more issues, if not more complicated ones, to deal with in this case than the average social security disability case. Plaintiff makes the reasonable claim that the government's subsequent 21-page brief (Dkt. No. 31-2) required Plaintiff's counsel to spend more time dissecting the government's arguments and led to plaintiff seeking excess pages for *her* Reply. But nothing can justify a claim that it took 190 hours to prepare a brief in this case.

In the end, then, this case might have been a little outside the 60-hour norm – but certainly not 300 hours outside that norm. Accordingly, the number of hours allowed shall be reduced to 70. "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, _U.S._, _ 113 S.Ct. 2205, 2216 (2011). A line-item examination with a jeweler's loupe is not required. *Montanez v. Simon*, 755 F.3d 547, 555 (7th Cir. 2014).

## CONCLUSION

Because I find the Commissioner's position not substantially justified, I award Embry attorney's fees. Finding the increased rate justified but the number of attorney hours excessive, I therefore award plaintiff fees at a rate of $185.59 for 70 hours of work, plus the non-contested costs of $26.80, totaling $13,018.10

ENTERED:  
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/4/15